IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRONCHEE CATHCART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:16-CV-02084-M |
| | § | |
| YP ADVERTISING & PUBLISHING LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment [ECF #16], filed by Defendant YP Advertising & Publishing LLC. For the reasons stated, the Motion is GRANTED.

**Background**

Plaintiff Bronchee Cathcart worked as a telephone sales representative in Defendant's Dallas Call Center from June 2013 until he was terminated on April 2, 2015. Def. MSJ App. at 003, ¶13. Plaintiff has suffered from diverticulitis since 2008. Pl. Resp. App. at 145, 195. Defendant was aware of Plaintiff's issues with diverticulitis because Plaintiff advised Defendant of his condition when he was hired. *Id.* at 145. Plaintiff also took sick leave in December 2013 and January 2014 because he was hospitalized for diverticulitis. *Id.*

On three separate occasions in 2014, Plaintiff received disciplinary counseling from his supervisor for work performance issues. Def. MSJ App. at 003, ¶15. Defendant documented each disciplinary counseling in the form of a Confidential Record of Discussion ("CRD"). *Id.* The first CRD dated April 29, 2014, stated that a February 2014 "Unauthorized Claims" Report revealed Plaintiff had failed to properly cancel a customer's advertising contract. *See id.* at 030. Defendant has developed policies that prescribe specific steps for its sales representatives to

1

follow when they sell, renew, or cancel advertising contracts. *Id.* at 2, ¶9. Failure to follow the prescribed steps results in an "unauthorized claim." *Id.* The April 29, 2014 CRD warned Plaintiff that his conduct violated company policies and procedures, but stated that Plaintiff was "being given the benefit of the doubt," and no further discipline was imposed. *Id.* The second CRD, dated June 2, 2014, stated that a March 2014 Unauthorized Claims Report revealed Plaintiff had failed to properly cancel a customer contract. *Id.* at 033. As a result of the infraction, Defendant suspended Plaintiff for one day and warned him that he could face further discipline, including termination, if he continued to violate company policy. *Id.* The third CRD, dated July 8, 2014, stated that an April 2014 Unauthorized Claims Report showed that Plaintiff had again failed to properly cancel a customer contract. *Id.* at 036. This time, Defendant suspended Plaintiff for three days and admonished Plaintiff that further violations would subject him to further disciplinary action, up to and including dismissal. *Id.* Plaintiff does not dispute that, as of October 2014, he had been disciplined on three separate occasions, and he was aware that he could be terminated for future unauthorized claims. *See* Pl. Resp. Br. at 5.

On October 9, 2014, Plaintiff became ill and visited a hospital emergency room, where he was diagnosed with high blood pressure. Def. MSJ App. at 077-79. The next day, Plaintiff requested and was approved for leave under the Family Medical Leave Act through November 30, 2015. *Id.* at 129. During his leave, Plaintiff experienced problems with diverticulitis, and he had back surgery. Plaintiff requested and was granted additional leave through January 1, 2015, which was the date Plaintiff's approved leave was exhausted. *Id.* While Plaintiff was on leave, Defendant discovered additional unauthorized claims for which it determined Plaintiff was responsible. *Id.* at 4, ¶16.

Plaintiff returned to work on March 11, 2015, but he went home early after meeting with his supervisor, Tiffany Ruff. *Id.* at 4, ¶17. On March 12, 2015, Plaintiff met with Ruff again, and she sent him home with a Medical Status Questionnaire to be completed by a physician. *Id.*, ¶18. Defendant received the completed questionnaire on March 20, 2015. *See id.* at 136-41. Plaintiff's physician noted on the questionnaire that Plaintiff was released to work with no restrictions as of March 12, 2015. *Id.*

The next time Plaintiff reported to work was April 2, 2015. *Id.*, ¶19. On that day, Ruff met with Plaintiff and provided him with two CRDs documenting unauthorized claims that were discovered during the time Plaintiff was on leave. *Id.*; *see also id*. at 39-40 & 42-43. The first CRD was initially dated October 6, 2014, but a handwritten note on the CRD stated "(couldn't be covered with Bronchee back in October as he went out on disability 10/10/14) was covered with him on 04/02/2015." *Id.* at 039. The CRD stated that a July 2014 Unauthorized Claims Report showed that Plaintiff had failed to properly handle a customer request for cancellation. *Id.* The CRD did not impose any specific discipline, but warned that the failure to follow company policy was unacceptable and would not be tolerated in the future. *Id.* The second CRD, dated April 2, 2015, advised Plaintiff that he had accumulated four additional unauthorized claims between November 2014 and January 2015, and would be terminated as a result. *Id.* at 42-43. Defendant terminated Plaintiff's employment effective April 2, 2015. *Id.* at 5, ¶21. Defendant subsequently closed its Dallas Call Center on January 31, 2016 and did not employ any telephone sales representatives at that location after that date. *Id.* at 3, ¶13.

Following his termination, Plaintiff filed this civil action against Defendant in state court, asserting violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann.

§§ 21.001–21.556. Plaintiff's First Amended Petition, which is the live pleading in this action, alleges that Defendant interfered with Plaintiff's FMLA rights by not reinstating him to the same, or a substantially similar, position after he returned from FMLA leave and unlawfully discriminated against him for taking leave by terminating his employment. Rem. Not., Ex. A-9, Pl. First Am. Pet. at 4. Plaintiff further alleges that Defendant discriminated against him in violation of the TCHRA by terminating his employment because of one or more of the disabilities from which he was suffering and that caused him to need an extended period of medical leave. *Id.* at 3.

Defendant removed the case to federal court on the basis of federal question jurisdiction. *See* Rem. Not. at 1-2, ¶ 4. Defendant now moves for summary judgment as to all of Plaintiff's claims and causes of action on grounds that (1) Defendant did not interfere with or deny any rights to which Plaintiff was entitled under the FMLA, and (2) Defendant terminated Plaintiff's employment for legitimate, nondiscriminatory, and nonretaliatory reasons, and there is no evidence that Defendant's reasons are a pretext for unlawful discrimination or retaliation in violation of state or federal law. The issues have been fully briefed, and Defendant's summary judgment motion is ripe for determination.

**Legal Standards**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine, if the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if its resolution could affect the outcome of the action. *Weeks*

4

*Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). The substantive law determines which facts are material. *See Anderson*, 477 U.S. at 247.

The summary judgment movant bears the initial burden of showing the absence of evidence to support the nonmovant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant satisfies this initial burden, the burden shifts to the nonmovant to show summary judgment is not proper. *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). To carry this burden, the nonmovant must designate specific facts in the record to show the existence of a genuine issue of material fact. *Id.* All evidence and inferences must be viewed in the light most favorable to the nonmovant. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

**Analysis**

Objections to Summary Judgment Evidence

As a preliminary matter, Plaintiff objects that Defendant's internal notes regarding four of his customer contracts, or "accounts," which are included in the April 2, 2015 CRD, constitute inadmissible hearsay and moves to strike the notations from the CRD. *See* Def. MSJ App., Ex. H. The notes explain why the accounts were deemed to be unauthorized claims charged to Plaintiff:

> **Corbitt, Renee** 11/07/2014--***OPENING/CLOSING CLAIM**** FTWTXI 10/2014 Item 35 OB ID 320007147905. Renhee Corbitt [sic], 817-294-8821. Renee called in stating she received an email from SR Bronchee Cathcart stating her IYP would be cancelled started in Oct 10/2014, per notes and call logs, sSR did state he emailed Cust back letting her know it would be cancelled. I have tried to reach out to ASM and GM to see if they saved the account after 09/02/2014, however, due to no response, called DO spoke with Cassie ch3429 would brought IYP down for todays [sic] date. Adjusting for time this item billed in error. $144x2-110.40=$177.80 Approved by manager Jarrod Witteveen. Sales Force Case 07213161

5

> **Aroesty Steven M Law Office** 12/10/2014--Claim form sent to Mgr Sims on behalf of GAR Cathcart 12/08/2014--\*\*open\*\*Customer had requested to cancel but was autorenewed. Sales Rep is requesting 100%. 32006739552 ST LOUIS STLMO 02/2014. \*\*Closing\*\* Formula $ 468.00 ASQ: unauthorized, unsigned contract, sic. Case ID: 07470530
>
> **ETC** 01/14/2015--Open/Close ASM Patty pw 797a is calling because she wants to file claim. Customer says that they canceled. She found a recorded call from rep to customer on Feb 5 2014 to cancel the advertising, she said the SR should've cancelled the advertising at that time but didn't and the customer has been calling into [sic] them for months disputing this contract. I agreed to do an adjustment to correct as AS FC SLC LTRARI 02/2014 Obligation ID 320006846862 Item ID 5 1068.17 approved by Jarrod Witteveen
>
> **Harden, Roger A** 01/23/2015--Open/Close Case Number: 07599113 AUSTX 2014 4HS(125) WBLN(124) $3276 Carmen Tripplett ct3062 Denise Erickson de 4439 CXG ct3062 NPS: Please process one time adjustment in the amount of $3276. Customer requested advertising be cancelled with sales rep Bronchee Cathcart within cancellation time frame, the account was never cancelled and rep is no longer with the company. The Account notes in the system read: reclosed due to mbr status….per shari bower [sic], without the customers [sic] approval or signature. Also, per Micheal Haake (GM) if there is no vv in the system to adjust. Adjustment on 4HS(125) $242.00 + WBLN(124) $31.00=$273.00 x 12 months = $3276 Adjustment Approval from CXG Manager Denise Erickson de4439

*Id.* at 042-43. Ruff, who prepared the April 2, 2015 CRD, testified at her deposition that she did not write the notes and has no first-hand knowledge of the accounts or Plaintiff's activity with respect to the accounts. *See* Pl. Resp. App., Ex. B at 79-81. Defendant responds that the notes are not hearsay because they are not being offered for the truth of the matter asserted—that is, to prove that Plaintiff actually failed to cancel the customer accounts as described in the notes, but for the effect they had on the decision makers regarding Plaintiff's termination. Defendant argues

that Plaintiff's supervisors determined he should be fired based on reports of multiple unauthorized claims.

The Court agrees that Defendant has not proffered the notes for the truth of the matters asserted and thus OVERRULES the hearsay objection. *See* Fed. R. Evid. 801(c) (explaining that a statement is not hearsay if offered for a reason other than proving truth of the matter asserted); *Brauninger v. Motes*, 260 F. App'x 634, 637 (5th Cir. 2007) (report containing out-of-court statements admissible when offered not for truth of the matter asserted, but to show what employer relied on in making decision to fire employee). Plaintiff's request to strike the notes from the April 2, 2015 CRD is DENIED.

## FMLA Interference

In his response to Defendant's Motion, Plaintiff states he is "waiving his claim" for FMLA interference and will not respond on the issue of FMLA interference. *See* Pl. Resp. Br. [ECF #21] at 1 & 6, n.3. In making this choice, Plaintiff has failed to designate specific facts showing that there is a genuine issue for trial on his claim for FMLA interference. The Court therefore GRANTS Defendant's summary judgment motion as to that claim.

## TCHRA Disability Discrimination & FMLA Retaliation

Plaintiff's remaining claims are that his termination constitutes (1) disability discrimination in violation of the TCHRA and (2) unlawful retaliation under the FMLA. Because Plaintiff relies solely on circumstantial evidence to prove his entitlement to relief, the Court analyzes both claims under the *McDonnell Douglas* burden-shifting framework. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (confirming the *McDonnell Douglas* burden-shifting analysis applies to discrimination claims brought under the TCHRA); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) ("The Fifth Circuit

applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA."). To avoid summary judgment under this framework, Plaintiff must first establish a prima facie case of discrimination or retaliation.

Plaintiff may establish a prima facie case under the TCHRA by showing (1) he has a disability; (2) he was qualified for the job; and (3) an adverse employment decision was made because of his disability. *See Pegram v. Honeywell*, 361 F.3d 272, 286 (5th Cir. 2004) (noting claims under the TCHRA are subject to the same legal standards as claims under the Americans with Disabilities Act, 42 U.S.C. § 12.112); *see also Gonnering v. Blue Cross and Blue Shield of Texas*, 420 F. Supp. 2d 660, 668 (W.D. Tex. 2006). Plaintiff is considered disabled if he "either (1) is actually disabled, (2) is regarded as being disabled, or (3) has a record of being disabled." *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir. 2001). Similarly, Plaintiff may establish a prima facie case under the FMLA by showing (1) he engaged in activity protected under the statute, such as taking or requesting leave; (2) he suffered an adverse employment decision; and (3) a causal link exists between his protected activity and the adverse decision. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 380 (5th Cir. 2013).

If Plaintiff prevails on his prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory, nonretaliatory reason for the adverse employment decision. *Id*. If Defendant articulates such a reason, the burden shifts back to Plaintiff to offer sufficient evidence to create a genuine issue of fact that Defendant's reason, although true, is but one of the reasons for its conduct, another of which was discrimination or retaliation.[1] *Id*. If Plaintiff is

---

[1] Plaintiff contends this case is a mixed-motive case, and Defendant does not argue that the Court should apply the but-for standard articulated in *University of Texas Southwestern Medical Center v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013), which applies in Title VII retaliation cases. In the absence of any argument or authority holding that *Nassar* applies to Plaintiff's FMLA retaliation claims, the Court applies the mixed-motive standard. *See Wheat v. Fl. Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016) ("Neither [the Fifth Circuit], nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims."); *see also Wojcik v. Costco Wholesale Corp.*, 2015 WL 1511093, at *11, n.20 (N.D. Tex., Apr. 2, 2015) (assuming plaintiff

successful in meeting his ultimate burden, Defendant may still be entitled to summary judgment if it provides sufficient evidence to establish as a matter of law that it would have made the adverse employment decision despite its improper motive. *Id.* Thus, Defendant's final burden is "effectively that of proving an affirmative defense." *Id*. (internal quotation and citation deleted).

For purposes of its summary judgment motion, Defendant concedes that Plaintiff was protected under the TCHRA and the FMLA and that Plaintiff's termination constitutes an adverse employment decision. However, Defendant disputes any causal connection exists between Plaintiff's protected status and his termination. Defendant argues there is no evidence in the record that it terminated Plaintiff because of his disability or in retaliation for his having taken FMLA leave. To the contrary, Defendant argues, all the evidence indicates that Plaintiff was fired because Defendant discovered additional unauthorized claims that were charged to Plaintiff. Defendant specifically points to the multiple CRDs documenting written warnings and suspensions meted out to Plaintiff because he failed to follow company policy and properly terminate customer accounts. Plaintiff does not dispute that he accumulated three CRDs prior to going on FMLA leave, and he acknowledges that Defendant could have terminated him for any additional unauthorized claims.

Plaintiff argues that he was terminated "immediately upon his return to work" and the temporal proximity between his return and his termination is sufficient evidence of a causal connection at the prima facie stage. The Court finds, however, that Plaintiff's argument mischaracterizes the uncontroverted summary judgment evidence showing that Plaintiff's FMLA leave expired on January 1, 2015; yet, he did not return to work until March 11, 2015, and he was not terminated until April 2, 2015. *See* Def. MSJ App. at 5, 90, 129. Further, temporal

---

bringing FMLA retaliation claim can proceed under mixed-motive standard because Fifth Circuit has not held otherwise); *Mathis v. BDO USA, LLP*, 2014 WL 975706, at * 6 (S.D. Tex. March 12, 2014) (applying mixed-motive standard to FMLA case "until a higher court says otherwise").

proximity, by itself, is not sufficient to establish a causal link unless the proximity is "very close." *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 808 (5th Cir. 2007). Here, the three-month period between the exhaustion of Plaintiff's leave and his termination is not, by itself, sufficiently close to establish a causal connection. *Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012) (holding two-month period between end of FMLA leave and dismissal was insufficient to establish a prima facie case); *Everett v. Central Miss., Inc. Head Start Program*, 444 F. App'x 38, 47 & n. 31 (5th Cir. 2011) (noting that three- and four-month periods have been found to be insufficient to establish prima facie evidence of causation). The Court finds that Plaintiff has failed to establish a prima facie case of discrimination or retaliation. For this reason alone, Defendant is entitled to summary judgment on Plaintiff's TCHRA and FMLA retaliation claims.

Even if Plaintiff could establish a prima facie case, however, Defendant has articulated a legitimate, nondiscriminatory, nonretaliatory reason for terminating Plaintiff's employment. Defendant explains that it fired Plaintiff for repeatedly violating its unauthorized claims policy. This proffered reason shifts the burden back to Plaintiff to identify evidence to create a genuine fact issue that Defendant's reason, although true, is but one of the reasons for its decision, another of which was unlawful discrimination or retaliation. *Mendez v. Dollar Tree Stores, Inc.*, 114 F. App'x 149, 150 (5th Cir. 2004) (per curiam) (holding that continuing violation of company policy was legitimate, nondiscriminatory reason for terminating employment).

Plaintiff attempts to create such a fact question by challenging the validity of the last four unauthorized claims charged to him. Plaintiff denies that he was responsible for any of the four unauthorized claims or that the customers whose accounts are at issue ever requested cancellation. However, the relevant question is not whether Defendant wrongly concluded that

Plaintiff failed to follow company policy and terminated Plaintiff based on that erroneous conclusion; the question is whether Defendant's decision to fire Plaintiff was made with discriminatory motive. *See Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (noting that even an incorrect belief that an employee's performance is inadequate can constitute a legitimate, nondiscriminatory reason for an employment decision, and that evidentiary disputes concerning job performance are insufficient to show that a proffered justification is unworthy of credence). Here, Plaintiff has not introduced evidence that Defendant did not have a good faith belief that Plaintiff failed to properly cancel several customer accounts in violation of company policy.

Plaintiff also contends that Defendant's proffered reason is suspect because Defendant did not give him an opportunity to investigate the unauthorized claims identified in the last two CRDs, in contravention of Defendant's policy to allow sales representatives to dispute unauthorized claims. However, an employer's failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives. *Grubb v. Southwest Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008)

Plaintiff next argues that Defendant acted with a discriminatory motive because it had no intention of returning Plaintiff to work when he returned from leave. In support of this argument, Plaintiff points to the October 6, 2014 CRD, entitled "Confidential Record of Discussion (Disability)," which Defendant prepared shortly before Plaintiff began his FMLA leave on October 10, 2014. Def. MSJ App. at 039. The handwritten note in the upper right-hand corner explains that the CRD "(couldn't be covered with Bronchee back in October as he went out on disability 10/10/14) was covered with him on 04/02/2015." Def. MSJ App. at 039. The October 6, 2014 CRD advised Plaintiff that the July 2014 Unauthorized Claims Report revealed Plaintiff

11

had failed to properly process paperwork associated with a customer request to cancel its account. *Id.* The CRD further warned Plaintiff that his failure to follow company policy was "unacceptable" and future violations could result in his termination. *Id.* The CRD did not threaten immediate termination, and Ruff testified at her deposition that Defendant was not going to terminate Plaintiff's employment based on the conduct attributed to him in the CRD. Pl. Resp. App. at 49. Plaintiff also points to notes in the April 2, 2015 CRD regarding unauthorized claims charged to him. For example, a note for a claim charged against Plaintiff in December 2014 describes Plaintiff as "GAR"—which Plaintiff contends means "going away rep." *Id.* at 042. Another note for a claim charged against Plaintiff in January 2015 states "rep is no longer with the company." *Id.* at 043. Plaintiff further relies on Defendant's admission that it took no action while he was on leave to assign accounts to him to work on when he returned. Pl. Resp. App. at 64. The Court finds that nothing about the stray remarks contained in the October 2014 CRD and the April 2015 CRD raises a genuine fact issue as to whether Defendant fired Plaintiff because of a disability or because he took leave. *See Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002), *aff'd*, 72 F. App'x 112 (5th Cir. 2003). ("Stray remarks are insufficient to enable a claim to survive summary judgment when a plaintiff fails to produce substantial evidence of pretext."). Even when all the evidence identified by Plaintiff is viewed together, it amounts to no more than Plaintiff's subjective belief that Defendant had an unlawful motive for firing him. Plaintiff's subjective belief is not sufficient to establish a genuine issue of material fact regarding pretext or that Plaintiff was a victim of unlawful retaliation or discrimination. *See Jarjoura v. Ericsson, Inc.*, 266 F. Supp. 2d 519, 532 (N.D. Tex. 2003), *aff'd*, 82 F. App'x 998 (5th Cir. 2003).

Finally, Plaintiff relies on the closeness in time between his FMLA leave and the date of his termination. Evidence of temporal proximity between the exhaustion of Plaintiff's FMLA leave and his termination, without more, is insufficient to create a fact question as to whether retaliation was the real reason for his termination. *Grubb*, 296 F. App'x at 390. "[T]iming alone is not enough to support retaliation when evidence shows that the employer's actions were justified. An antidiscrimination or retaliation statute does not exempt an employee from violations of company work rules or job requirements." *Jarjoura*, 266 F. Supp. 2d at 532.

The Court determines Plaintiff has failed to demonstrate a genuine fact issue exists as to whether Defendant's stated reason for terminating his employment was false or that Plaintiff's disability or his FMLA leave was the real reason. Therefore, the Court GRANTS Defendant's summary judgment motion as to Plaintiff's claims for disability discrimination in violation of the TCHRA and FMLA retaliation.

## Conclusion

The Court GRANTS Defendant's Motion for Summary Judgment [ECF #16] and DISMISSES with prejudice all of Plaintiff's claims and causes of action.

SO ORDERED.

September 27, 2017.

_____
BARBARA M.G. LYNN
CHIEF JUDGE

13